No. 25-20045

# United States Court of Appeals

### FIFTH CIRCUIT

LYNWOOD MOREAU, *Plaintiff-Appellant*,
*v.*
HARRIS COUNTY, TEXAS, *Defendant-Appellee*.

JEFFREY STAUBER, Individually and On Behalf of All Others Similarly
Situated,
*Plaintiffs-Appellants*,
*v.*
HARRIS COUNTY, TEXAS, *Defendant-Appellee*.

EDWARD LOPEZ, *Plaintiff-Appellant*,
*v.*
HARRIS COUNTY, TEXAS, *Defendant-Appellee*.

ANTHONY MCCONNELL, *Plaintiff-Appellant*,
*v.*
HARRIS COUNTY, TEXAS, *Defendant-Appellee*.

*On Appeal from the*
*United States District Court for the Southern District of Texas*
*No. 4:19-cv-00646, Hon. Peter Bray*

## BRIEF OF APPELLANTS

CURT HESSE
  Tex. Bar No. 24065414
    curt@mooreandassociates.net

MELISSA MOORE
  Tex. Bar No. 24013189
    melissa@mooreandassociates.net

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street | Suite 1110
Houston, Texas 77002-1055
t (713) 222-6775
f (713) 222-6739
www.mooreandassociates.net

July 28, 2025

**CERTIFICATE OF INTERESTED PERSONS**

As required by Fed. R. App. P. 26.1, 28(a)(1) and 5th Cir. R. 28.2.1, 28.3(a), the undersigned counsel of record for Plaintiff-Appellant Lynwood Moreau, individually and on behalf of all others similarly situated, certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of the United States Court of Appeals for the Fifth Circuit may evaluate possible disqualification or recusal.

| Appellants | Lynwood Moreau |
|---|---|
| | Christopher Adolph |
| | Tammy Alfred |
| | Lynette Anderson |
| | Walter Bailey |
| | Eric Batton |
| | Roosevelt Berry, Jr. |
| | Melvin Blazek |
| | Scott Boyce |
| | Paul Bruce |
| | Charles Bryan |
| | Bryan Buccini |
| | Joash Butler |
| | Simon Cheng |
| | Cedrick Collier |
| | Sean Conrad |
| | Susan Cotter |
| | Paul Croas |
| | Earl Dean |
| | Shawn Denison |
| | Nathan Douglas |
| | Jeffrey Easthagen |
| | Linda Easthagen |
| | Chris Ecke |
| | Henry Elkin |
| | Larry Franks |
| | Jana Fuelling |
| | David Fusilier |
| | Jorge Gonzales |
| | John Glesmann |
| | Nancy Hennessy |
| | Antonio Hernandez |

LaTrina Kingsbury
Toby Kroeger
Kimberly Lee
John Legg
John Lightfoot
Edward Lopez
James Lovett
Ruth McClanahan
Anthony McConnell
Kevin Radabaugh
Mary Reed
Michael Richmond
Sondra Sams
Jason Scott
Jeffrey Stauber
Ronny Taylor
Eric Templeton
Darlene Thomas
Lonnie Tullos
Jonathan Viningre
James Wagner
Wendell Wayne
Qunicy Whitaker
Donald White
Lameka White
Trevor Windsor

Counsel for Appellants    Curt Hesse
Melissa Moore
Rochelle Owens (trial only)
MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street, Suite 1110
Houston, Texas 77002-1055
www.mooreandassociates.net

Bridget Davidson (trial only)
SPACE CITY LAW FIRM
Lyric Centre
440 Louisiana Street, Suite 1110
Houston, Texas 77002-1055
www.spacecitylaw.com

Robin Foster (trial only)
HARRIS COUNTY DEPUTIES' ORGANIZATION
3130 North Freeway
Houston, Texas 77009-2616
www.hcdo.com

Robert Swafford (trial only)
STRIKE FOR CAUSE JURY CONSULTING
2003 South Lamar Boulevard, Suite 8
Austin, Texas 78704-3373
www.strikeforcause.com

Renu Tandale (trial only)
TEXAS CHILDREN'S HOSPITAL
1919 South Braeswood Boulevard
Houston, Texas 77030-4444
www.texaschildrens.org

| | |
|---|---|
| Appellee | Harris County, Texas |
| Counsel for Appellee | Carolyn Russell |

Amanda Croushore
Stephen Quezada
Ryan Swink
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
One Allen Center
500 Dallas Street, Suite 2100
Houston, Texas 77002-4734
www.ogletree.com

Gavin Martinson (appeal only)
John Brown (appeal only)
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
8117 Preston Road, Suite 500
Dallas, Texas 75225-6325
www.ogletree.com

Barbara Callistien (trial only)
John Douglas (trial only)
Melissa Martin (trial only)
Moustapha Gassama (trial only)
HARRIS COUNTY ATTORNEY'S OFFICE
1019 Congress Street, 15th Floor
Houston, Texas 77002-1799
cao.harriscountytx.gov

Cameron Hatzel (trial only)
MEYER ORLANDO LLC
13201 Northwest Freeway, Suite 119
Houston, Texas 77040-6012
www.meyerorlando.com

Pam Rea (trial only)
KPA LAW
5629 Cypress Creek Parkway, Suite 216
Houston, Texas 77069-4214
www.kpalawfirm.com

Suzanne Lehman Johnson (trial only)
LEHMAN JOHNSON LAW, PLLC
325 Heights Boulevard
Houston, Texas 77007-2517
www.lehmanjohnson.com

Other Interested Parties    John Buri
Tetra Tech, Inc.

Counsel for
Other Interested Party    Stephen Roppolo
FISHER PHILLIPS, LLP
910 Louisiana Street, Suite 4000
Houston, Texas 77002-4904
www.fisherphillips.com

_____
Curt Hesse

### STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Lynwood Moreau, individually and on behalf of all others similarly situated, requests oral argument. This case involves numerous factual and legal issues. The Court's consideration of these issues may be assisted or advanced by the presence of the parties before the Court to comment upon the issues and respond to inquiries by the Court. Fed. R. App. P. 34(a)(1); 5th Cir. R. 28.2.3, 28.3(b), 34.2.


Curt Hesse

## TABLE OF CONTENTS

Page

Certificate of Interested Persons ........................................................... i

Statement Regarding Oral Argument ................................................. v

Table of Contents ............................................................................... vi

Table of Authorities ....................................................................... viii

Statement of Jurisdiction ................................................................... 1

Statement of the Issues ...................................................................... 2

    1.   whether the summary-judgment evidence, even if not controverted and viewing it in the light most favorable to Moreau and the other plaintiffs, would entitle Harris County to a directed verdict at trial on the salary-basis element of its § 213(a)(1) exemption defenses.............................................. 2

    2.   whether the summary-judgment evidence, even if not controverted and viewing it in the light most favorable to Moreau and the other plaintiffs who worked as criminal justice lieutenants, would entitle Harris County to a directed verdict at trial on the duties element of its standalone administrative exemption defense ......................................... 2

    3.   whether the district court erred by submitting, over the plaintiffs' objections, multiple disputed factual allegations combined into one question on an issue of law (exempt status under the FLSA) to the jury.......................................... 3

    4.   whether there was a legally sufficient basis for the jury to find that Moreau and the other plaintiffs were exempt from the overtime requirements of the FLSA under 29 U.S.C. § 213(a)(1) ................................................................................ 3

    5.   whether the jury's inconsistent verdict requires a new trial.............. 4

Statement of Related Cases................................................................. 3

Statement of the Case......................................................................... 3

TABLE OF CONTENTS
(continued)

Page

Summary of the Argument ............................................................. 12

Standards of Review...................................................................... 13

    A.  Motions for Summary Judgment Under Rule 56 ............................. 13

    B.  Jury Instructions..................................................................... 15

    C.  Motions for Judgment as a Matter of Law Under Rule 50................. 17

    D.  Motions for New Trial Under Rule 59 ................................. 19

Argument & Authorities.................................................................. 21

    1.  Overtime exemptions, including the executive and administrative exemptions, are affirmative defenses on which the employer has the burden of proof and are determined on a workweek basis........................................................... 21

    2.  The Court should reverse because the summary-judgment evidence—even if not controverted and viewing it in the light most favorable to the plaintiffs—would not entitle Harris County to a directed verdict at trial on the salary-basis element of its § 213(a)(1) exemption defenses.................................. 22

        a.  Salaried workers typically receive the same amount of pay each workweek regardless of the quality or quantity of their work .................................................................... 23

        b.  Harris County did not establish, as a matter of law, that the public employer safe harbor rule applied to its pay practices......................................................................... 26

        c.  Harris County did not establish that a reasonable relationship exists between Moreau's and the other plaintiffs' salaries and the amount they actually earned............. 29

        d.  There was a genuine issue of material fact as to whether Moreau and the other plaintiffs were paid on a salary basis............................................................................ 31

**TABLE OF CONTENTS**
(continued)

Page

3. The Court should reverse because the summary-judgment evidence—even if not controverted and viewing it in the light most favorable to the Moreau and the other plaintiffs who worked as criminal justice lieutenants—would not entitle Harris County to a directed verdict at trial on the duties element of its standalone administrative exemption defense ........... 31

4. The jury was erroneously charged ...................................................... 33

5. The evidence is legally insufficient to support the jury's verdict ................................................................................................. 35

   a. With respect to the executive exemption, there is no legally sufficient evidence that the primary job duty of Moreau and the other plaintiffs involved management of a customarily recognized department or subdivision of Harris County or that they could hire or fire anyone .................. 35

   b. With respect to the administrative exemption, there is no legally sufficient evidence that the primary job duty of Moreau and the other plaintiffs was the performance of any exemption-qualifying work ....................................... 37

6. The Court should order a new trial because the jury rendered an inconsistent verdict .......................................................... 40

Conclusion ................................................................................................ 42

Signature ................................................................................................. 42

Certification Regarding Privacy Redactions .................................... 43

Certification Regarding Electronic Submission ............................... 43

Certificate of Service ............................................................................ 44

Certificate of Compliance..................................................................... 45

## TABLE OF AUTHORITIES

Page

**Cases**

*Ancor Holdings, L.P. v. Landon Cap. Partners, L.L.C.*,
No. 23-10552,
2024 U.S. App. LEXIS 21448 (5th Cir. Aug. 23, 2024) ........................ 17

*Anthony v. Chevron USA, Inc.*,
284 F.3d 578 (5th Cir. 2002) .................................................... 18

*Baisden v. I'm Ready Prods., Inc.*,
693 F.3d 491 (5th Cir. 2012) .................................................... 16

*Baton Rouge Bldg. & Constr. Council AFL-CIO v.
Jacobs Constructors, Inc.*,
804 F.2d 879 (5th Cir. 1986) .................................................... 13

*Black v. Pan Am Labs., L.L.C.*,
646 F.3d 254 (5th Cir. 2011) .................................................... 19

*Black v. Pan Am. Labs., LLC*,
646 F.3d 254 (5th Cir. 2011) .................................................... 19

*Brennan's Inc. v. Dickie Brennan & Co., Inc.*,
376 F.3d 356 (5th Cir. 2004) .................................................... 19

*Carley v. Crest Pumping Techs., L.L.C.*,
890 F.3d 575 (5th Cir. 2018) ............................................... 18, 37

*Carmona v. Sw. Airlines Co.*,
604 F.3d 848, 854 (5th Cir. 2010) .............................................. 18

*Carter v. Local 556*,
138 F.4th 164 (5th Cir. 2025) .................................................. 16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ......................................................... 13, 14

*Chapman v. BOK Fin. Corp.*,
No. 12-CV-613-GKF-PJC,
2014 U.S. Dist. LEXIS 101652 (N.D. Ok. Jul. 25, 2014) ...................... 41

**TABLE OF AUTHORITIES**
(continued)

Page

*Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*,
    878 F.3d 478 (5th Cir. 2017) ................................................................. 18

*Consol. Cos. v. Lexington Ins. Co.*,
    616 F.3d 422 (5th Cir. 2010) ................................................................. 19

*Corning Glass Works v. Brennan*,
    417 U.S. 188 (1974) ........................................................................... 2, 21

*Corry v. Liberty Life Assurance Co. of Bos.*,
    499 F.3d 389 (5th Cir. 2007) ................................................................. 18

*Crawford v. Falcon Drilling Co.*,
    131 F.3d 1120 (5th Cir. 1997) ............................................................... 17

*Dahlen v. Gulf Crews, Inc.*,
    281 F.3d 487 (5th Cir. 2002) .......................................................... 16, 17

*Dalheim v. KDFW-TV*,
    918 F.2d 1220 (5th Cir. 1990) ................................................... 33, 38, 41

*Descant v. CTCI Am., Inc.*,
    No. 25-40112 (5th Cir.) ........................................................................... 3

*Dewan v. M-I. L.L.C.*,
    858 F.3d 331 (5th Cir. 2017) ....................................................... passim

*Elliott v. Dril-Quip, Inc.*,
    No. H-14-1743,
    2015 U.S. Dist. LEXIS 156095 (S.D. Tex. Nov. 18, 2015) ............. 32, 37

*Escribano v. Travis Cnty., Tex.*,
    947 F.3d 265 (5th Cir. 2020) .......................................................... 23, 29

*Fairchild v. All Am. Check Cashing, Inc.*,
    815 F.3d 959 (5th Cir. 2016) ................................................................. 19

*Fontenot v. Upjohn Co.*,
    780 F.2d 1190 (5th Cir. 1986) ............................................................... 14

TABLE OF AUTHORITIES
(continued)

Page

*Garwood v. International Paper Co.*,
  666 F.2d 217 (5th Cir. 1982) ................................................................. 34

*Gilchrist v. Schlumberger Tech. Corp.*,
  No. 22-50257 (5th Cir.) ........................................................................... 3

*Goodner v. Hyundai Motor Co.*,
  650 F.3d 1034 (5th Cir. 2011) ............................................................... 18

*Guidry v. Kem Mfg. Co.*,
  898 F.2d 402 (5th Cir. 1979) ................................................. 34, 41, 42

*Guilbeau v. Schlumberger Tech. Corp.*,
  No. 25-90016 (5th Cir.) ........................................................................... 3

*Hay v. Irving*,
  893 F.2d 796 (5th Cir. 1990) ................................................................. 34

*Helix Energy Sols. Gp., Inc. v. Hewitt*,
  143 S. Ct. 677 (2023) .............................................................................. 30

*Hoang v. Microsemi Corp.*,
  No. 4:19-cv-01971,
  2025 U.S. Dist. LEXIS 57052 (S.D. Tex. Mar. 27, 2025) ................... 15

*In re DePuy Orthopedics, Inc.*,
  888 F.3d 753 (5th Cir. 2018) ................................................................. 20

*Janvey v. Dillon Gage, Inc.*,
  856 F.3d 377 (5th Cir. 2017) ........................................................... 15, 16

*Jimenez v. Wood Cnty., Tex.*,
  660 F.3d 841 (5th Cir. 2011) ................................................................. 17

*Jones v. Miles*,
  656 F.2d 103 (5th Cir. 1981) ................................................................. 34

*Jowers v. Lincoln Elec. Co.*,
  617 F.3d 346 (5th Cir. 2010) ........................................................... 16, 33

TABLE OF AUTHORITIES
(continued)

Page

*Kendrick v. Illinois C. G. R. Co.*,
  669 F.2d 341 (5th Cir. 1982) .................................................. 34

*Kinney v. District of Columbia*,
  994 F.2d 6 (D.C. Cir. 1993) ................................................... 25

*Lindsley v. Omni Hotels Mgmt. Corp.*,
  123 F.4th 433 (5th Cir. 2024) ................................................ 16

*Lipnicki v. Meritage Homes Corp.*,
  No. 3:10-cv-605,
  2014 U.S. Dist. LEXIS 32951 (S.D. Tex. Feb. 13, 2013) ...................... 15

*Lott v. Howard Wilson Chrysler-Plymouth, Inc.*,
  203 F.3d 326 (5th Cir. 2000) ................................................ 21

*Martin v. Malcolm Pirnie, Inc.*,
  949 F.2d 611 (2d Cir. 1991) ................................................. 25

*McKee v. CBF Corp.*,
  299 F. App'x 426 (5th Cir. 2008) ........................................... 14

*Mello v. Sara Lee Corp.*,
  431 F.3d 334 (5th Cir. 2005) ................................................ 13

*Miller v. Travis Cnty., Tex.*,
  953 F.3d 817 (5th Cir. 2020) ................................................ 36

*Morgan v. Family Dollar Stores*,
  551 F.3d 1233 (5th Cir. 2008) ............................................... 41

*MultiPlan, Inc. v. Holland*,
  937 F.3d 487 (5th Cir. 2019) ................................................ 17

*North Cypress Med. Ctr. v. Aetna Life Ins.*,
  898 F.3d 461 (5th Cir. 2018) ................................................ 17

*Owsley v. San Antonio Indep. Sch. Dist.*,
  187 F.3d 521 (5th Cir. 1999) ................................................ 13

TABLE OF AUTHORITIES
(continued)

Page

*Papin v. Univ. of Miss. Med. Ctr.*,
    109 F.4th 354 (5th Cir. 2024) .................................................................. 19

*Pryor v. Trane Co.*,
    138 F.3d 1024 (5th Cir. 1998) .................................................................. 19

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000) .................................................................................. 19

*Richards v. Mitcheff*,
    696 F.3d 635 (7th Cir. 2012) .................................................................... 13

*Sec'y Lab. v. Daylight Dairy Prods., Inc.*,
    779 F.2d. 784 (1st Cir. 1985) .............................................................. 2, 22

*Spradling v. City of Tulsa*,
    95 F.3d 1492 (10th Cir. 1996) ......................................................... passim

*Swigart v. Fifth Third Bank*,
    870 F. Supp. 2d 500 (S.D. Ohio 2012) .................................................... 41

*Tex. Foods Indus. Ass'n. v. United States Dept. of Agric.*,
    81 F.3d 578 (5th Cir. 1996) ...................................................................... 39

*Tompkins v. Cyr*,
    202 F.3d 770 (5th Cir. 2000) .................................................................... 17

*Triple Tee Golf, Inc. v. Nike, Inc.*,
    485 F.3d 253 (5th Cir. 2007) .................................................................... 13

*Tyler v. Cedar Hill Indep. Sch. Dist.*,
    426 F. App'x 306 (5th Cir. 2011) ............................................................. 15

*United States v. Landau*,
    155 F.3d 93 (2d Cir. 1998) ....................................................................... 20

*Vanderbilt Mortg. & Fin., Inc. v. Flores*,
    692 F.3d 358 (5th Cir. 2012) .................................................................... 17

*Walker v. Kansas City S. R. Co.*,
    674 F.2d 1130 (5th Cir. 1982) .................................................................. 34

## TABLE OF AUTHORITIES
(continued)

Page

*Ward v. Succession of Freeman*,
854 F.2d 780 (5th Cir. 1988) ................................................. 34

*Warfield v. Byron*,
436 F.3d 551 (5th Cir. 2006) ................................................. 15

*X Techs., Inc. v. Marvin Test Sys.*,
719 F.3d 406 (5th Cir. 2013) ................................................. 14

*Zannikos v. Oil Inspections (U.S.A.), Inc.*,
605 F. App'x 349 (5th Cir. 2015) ...................................... 21, 22

**Statutes**

28 U.S.C. § 1291 ..................................................................... 1, 2

28 U.S.C. § 1331 ......................................................................... 1

29 U.S.C. § 207(a)(1) ........................................................... 1, 21

29 U.S.C. § 213(a)(1) ........................................................ passim

29 U.S.C. § 216(b) ...................................................................... 1

29 U.S.C. §§ 201-219 ......................................................... passim

Tex. Gov't Code § 659.016(d) ................................................. 27

Tex. Gov't Code § 659.016(e) ................................................. 27

**Other Authorities**

Charles Alan Wright & Arthur R. Miller,
*Federal Practice & Procedure* (3d ed. 1995) ........................ 20

*Webster's Ninth New Collegiate Dictionary* (1991) ..................... 38

**Rules**

5th Cir. R. 25.2.1 ..................................................................... 43

5th Cir. R. 25.2.13 ................................................................... 43

**TABLE OF AUTHORITIES**
(continued)

Page

5th Cir. R. 25.2.5 ........................................................................ 44

5th Cir. R. 28.2.1 ............................................................................ i

5th Cir. R. 28.2.3 .......................................................................... v

5th Cir. R. 28.3(a) ........................................................................... i

5th Cir. R. 28.3(b) ......................................................................... v

5th Cir. R. 28.3(f) ......................................................................... 2

5th Cir. R. 32.1 ........................................................................... 45

5th Cir. R. 32.3 ........................................................................... 45

5th Cir. R. 34.2 ........................................................................... v

5th Cir. R. 46.3 ........................................................................... 3

Fed. R. App. P. 25(b) .................................................................. 44

Fed. R. App. P. 25(c) .................................................................. 44

Fed. R. App. P. 26.1 ...................................................................... i

Fed. R. App. P. 28(a)(1) ................................................................. i

Fed. R. App. P. 28(a)(10) ........................................................... 45

Fed. R. App. P. 28(a)(5) ............................................................... 2

Fed. R. App. P. 32(a)(5) ............................................................. 45

Fed. R. App. P. 32(a)(6) ............................................................. 45

Fed. R. App. P. 32(a)(7)(B) ........................................................ 45

Fed. R. App. P. 32(f) .................................................................. 45

Fed. R. App. P. 32(g)(1) ............................................................. 45

TABLE OF AUTHORITIES
(continued)

Page

Fed. R. App. P. 34(a)(1) ............................................................. v

Fed. R. Civ. P. 16 ...................................................................... 8

Fed. R. Civ. P. 49 ............................................................... 10, 33

Fed. R. Civ. P. 50 .......................................................... 9, 17, 18

Fed. R. Civ. P. 50(a) ................................................................. 14

Fed. R. Civ. P. 50(b) ............................................................. 2, 11

Fed. R. Civ. P. 51(c)-(d) ........................................................... 17

Fed. R. Civ. P. 56 ................................................................ 1, 13

Fed. R. Civ. P. 59 ......................................................... 2, 11, 19

Fed. R. Civ. P. 59(a)(1)(A) ....................................................... 19

**Regulations**

29 C.F.R. § 541.100(a)(1) ......................................................... 22

29 C.F.R. § 541.102 ................................................................. 35

29 C.F.R. § 541.103 ................................................................. 35

29 C.F.R. § 541.103(a) ......................................................... 35, 36

29 C.F.R. § 541.106(c) (2006) ................................................... 36

29 C.F.R. § 541.115 (1992) ....................................................... 36

29 C.F.R. § 541.115 (2003) ....................................................... 36

29 C.F.R. § 541.118 ................................................................. 27

29 C.F.R. § 541.200(a) ......................................................... 32, 37

29 C.F.R. § 541.200(a)(1) ......................................................... 22

TABLE OF AUTHORITIES
(continued)

Page

29 C.F.R. § 541.201(b) .................................................................. 32, 39

29 C.F.R. § 541.203 .................................................................. 32, 38

29 C.F.R. § 541.602(a) .................................................................. 23, 24, 25

29 C.F.R. § 541.604(b) .................................................................. 25, 30

29 C.F.R. § 541.700 .................................................................. 35

29 C.F.R. § 541.700(a) .................................................................. 31, 32, 40, 41

29 C.F.R. § 541.710 .................................................................. 25, 26, 28

29 C.F.R. § 776.4(a) .................................................................. 21

29 C.F.R. § 778.104 .................................................................. 21

29 C.F.R. § 784.114 .................................................................. 22

29 C.F.R. §§ 541.600-541.607 .................................................................. 22

9 C.F.R. § 541.201(b) .................................................................. 37

Defining and Delimiting the Exemptions for Executive,
    Administrative, Professional, Outside Sales and Computer
    Employees,
    84 Fed. Reg. 51,230, 51,231 (Sep. 27, 2019) ........................................ 22

**STATEMENT OF JURISDICTION**

This is an appeal under 28 U.S.C. § 1291 from the final order or judgment of a district court that disposes of all parties' claims. On February 22, 2019, Plaintiff-Appellant Lynwood Moreau (referred to as "Moreau") filed a putative collective-action lawsuit against Defendant-Appellee Harris County, Texas (referred to as "Harris County" or "the County") in the United States District Court for the Southern District of Texas, alleging that it violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219, ("FLSA") by failing to pay him and others overtime for hours worked in excess of forty per workweek. (*See*, ROA.31-43.) *See*, 29 U.S.C. §§ 207(a)(1), 216(b). Many other current and former employees of the County joined the lawsuit after it was filed by consenting in writing to be part of it under 29 U.S.C. § 216(b). (*See*, ROA.54-58, 72-73, 1041, 1516-64.) The district court had federal-question jurisdiction over the plaintiffs' FLSA claims under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

The district court partially granted one of Harris County's three motions for summary judgment under Fed. R. Civ. P. 56 on March 17, 2024. (*See*, ROA.2721-65.) What was left of the case was tried to a jury. (*See*, ROA.24.) After four days, the jury rendered a verdict in favor of Harris County on July 26, 2024. (*See*, ROA.3261-67.) The district court entered final judgment dismissing the plaintiffs' claims three days later on July 29, 2024. (*See*, ROA.3269.) On August 26, 2024, the plaintiffs moved for judgment as a matter

of law under Fed. R. Civ. P. 50(b) or, alternatively, for a new trial under Fed. R. Civ. P. 59. (*See*, ROA.3314-33.) That motion was denied on January 6, 2025. (*See*, ROA.3476-89.) Moreau, individually and on behalf of the other plaintiffs, timely appealed that order and the "order granting summary judgment in part" (ROA.3497) on February 4, 2025. (*See*, ROA.3497-99.) This Court has appellate jurisdiction from the final decision of a district court under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

In accordance with Fed. R. App. P. 28(a)(5) and 5th Cir. R. 28.3(f), the following issues are being submitted for review:

1. whether the summary-judgment evidence, even if not controverted and viewing it in the light most favorable to Moreau and the other plaintiffs, would entitle Harris County to a directed verdict at trial on the salary-basis element of its § 213(a)(1) exemption[1] defenses;

2. whether the summary-judgment evidence, even if not controverted and viewing it in the light most favorable to Moreau and the other plaintiffs who worked as criminal justice[2] lieutenants, would entitle Harris County to a directed verdict at trial on the

---

[1] Exemptions from the minimum wage and/or maximum hour requirements of the FLSA are affirmative defenses, and the burden to establish them rests squarely on the employer. *See*, *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *see also*, *infra* pages 21-22. They are determined on a workweek basis. *See, e.g.*, *Sec'y Lab. v. Daylight Dairy Prods., Inc.*, 779 F.2d. 784, 787 (1st Cir. 1985) ("The Secretary, however, determines whether the executive exemption applies on a week-by-week basis[.]").

[2] See *infra* pages 6-7 (describing different categories of plaintiffs).

duties element of its standalone administrative exemption[3] defense;

3. whether the district court erred by submitting, over the plaintiffs' objections, multiple disputed factual allegations combined into one question on an issue of law (exempt status under the FLSA) to the jury;

4. whether there was a legally sufficient basis for the jury to find that Moreau and the other plaintiffs were exempt from the overtime requirements of the FLSA under 29 U.S.C. § 213(a)(1);

5. whether the jury's inconsistent verdict requires a new trial;

## STATEMENT OF RELATED CASES

In accordance with 5th Cir. R. 46.3, the following cases involve the same, substantially the same, similar or related issues and are either pending in this Court or will likely be appealed to this Court: (1) *Gilchrist v. Schlumberger Tech. Corp.*, No. 22-50257 (5th Cir.); (2) *Descant v. CTCI Am., Inc.*, No. 25-40112 (5th Cir.) and (3) *Guilbeau v. Schlumberger Tech. Corp.*, No. 25-90016 (5th Cir.).

## STATEMENT OF THE CASE

Moreau, a former deputy sheriff employed by Harris County, claims that he and other deputy sheriffs were denied overtime in violation of the FLSA. (*See*, ROA.31-43.) The central dispute is not whether they worked more forty hours per week (they did) or whether they received overtime pay for it

---

[3] See *supra* note 1 and *infra* pages 21-22.

(they did not); it is, instead, whether they are entitled to overtime at all. In its answer, Harris County responded to that question in the negative, suggesting the deputy sheriffs' claims were "barred because the work [they] performed falls within exemptions, exclusions, exceptions, or credits provided for in the FLSA." (ROA.65.)

As the magistrate judge explained, the Harris County Sheriff's Office uses a "paramilitary chain of command: deputies report to sergeants, who report to lieutenants, who report to captains, who report to majors, who report to assistant chiefs, who report to the chief deputy, who ultimately reports to the sheriff." (ROA.2722; *see also*, ROA.2681 (organizational chart).) Functionally, it is "divided into two commands[.]" (ROA.2722; *see also*, ROA.2681 (organizational chart).) One is the Law Enforcement Command. (*See*, ROA.2722; *see also*, ROA.2681 (organizational chart).) The "primary purpose Law Enforcement Command is to uphold the agency's mission of enhancing the safety and earning the trust of Harris County residents by keeping the peace" through, as the name suggests, law enforcement. *See*, Harris County Sheriff's Office: Law Enforcement Command, https://harriscountyso.org/AboutUs/LawEnforcementCommand (last visited Jul. 22, 2025). It is subdivided into bureaus, including the Criminal Investigations Bureau and the Patrol Bureau. (*See*, ROA.2722; *see also*, ROA.2681 (organizational chart).) The bureaus are further subdivided into

different divisions that represent the major functional activities within the bureau (for the Criminal Investigations Bureau) or geographic districts (for the Patrol Bureau). (*See*, ROA.2722; *see also*, ROA.2681 (organizational chart).)

The other command is the Criminal Justice Command. (*See*, ROA.2722; *see also*, ROA.2681 (organizational chart).) Its "primary responsibility" is operating the Harris County jail system and "to ensure the care, custody and control of over 8700 inmates housed each day." Harris County Sheriff's Office: Criminal Justice Command, https://harriscountyso.org/AboutUs/CriminalJusticeCommand (last visited Jul. 22, 2025). It is subdivided into bureaus, including the 1200 Housing Bureau and the Justice Management Bureau. (*See*, ROA.2723; *see also*, ROA.2681 (organizational chart).)

"Each command is led by an assistant chief." (ROA.2723; *see also*, ROA.2681 (organizational chart).) Majors are in charge of the individual bureaus that comprise the command, and they report to the assistant chief. (*See*, ROA.2723; *see also*, ROA.2681 (organizational chart).) A captain is in charge of each of the bureau's divisions or districts and reports to the major. (*See*, ROA.2723; *see also*, ROA.2681 (organizational chart).) A lieutenant is not in charge of any recognized department of subdivision of the Harris County Sheriff's Office; instead, he "function[s] as the 'watch commander' for a given

shift within a district[]" and is usually the highest-ranking officer on duty in his assigned district or division. (*See*, ROA.2723; *see also*, ROA.2681 (organizational chart).)

The plaintiffs in this case fell "into three categories: (1) law enforcement patrol; (2) law enforcement investigation; and (3) criminal justice" and were either "captains [or] lieutenants." (ROA.2722.) The summary-judgment evidence established that the criminal justice lieutenants were primarily responsible for ensuring that inmates were in cells, searching inmates and ensuring cell doors were locked. (*See*, ROA.2345, 2441; ROA.2481 (daily interactions with inmates because they "were everywhere[]"); ROA.2481 (most important duty was ensuring that jail was secure); ROA.2381 (not responsible for managing inmate records). The evidence at trial established that law enforcement lieutenants were primarily responsible for front-line law enforcement work, which includes responding to calls for service, working crime scenes, meeting with and transporting inmates and similar activities. (*See*, ROA.4012 (primary responsibility should be "making scenes[]"); ROA.4144 (spent between 50% and 60% of time in field); ROA.4016-19; ROA.4021-31; ROA.4036; ROA.4043-45; ROA.4048-51; ROA.4099-4105; ROA.4156.) In fact, one of Harris County's own witnesses explained that, as a lieutenant, he spent "75 percent of [his] time" in the field patrolling. (ROA.4527-28.) The evidence also established (both at the

summary-judgment stage and at trial) that none of the lieutenants had any meaningful impact on promotions. (*See, e.g.*, ROA.2345, 4105-4106.)

Regardless of command, all lieutenants and captains are paid the same way. (*See*, ROA.2645, 2651-52.) The compensation system works like this: Although classified as exempt, captains and lieutenants are expected to work at least forty hours per week. (*See*, ROA.2651-53, 2655; *see also*, ROA.2653 ("Q: … Is that—does that mean, like, your understanding is that these lieutenants and captains, for example, need to have at least 40 hours a week[?] A: Yes.").) To ensure that these employees' wages would not be reduced if they work less than forty hours a week, the County charges partial day absences to an overhead account that consists of accumulated compensatory time off that the captains and lieutenants earned on a straight-time basis. (*See*, ROA.2048, 2645, 2656.) But if they do not have any accrued compensatory time off in their overhead account, their pay is docked for each hour below forty that was not worked. (*See*, 2651-53, 2660, 2661-62; *see also*, ROA.2655 ("Q: … [E]xempt employees are subject to deductions for partial-day absences, right? … A: Right."); ROA.2655 ("Q: … If they don't work a full 40 hours and they don't have paid time off, they're getting docked? A: Yes. Q: And you're confident about that? Yes."); ROA.2659 (explaining that deductions for partial day absences are "required … whenever someone is absent from work, regardless of reason, if … they don't have paid time off").)

Less than one month after the Rule 16 conference, Harris County moved for summary judgment on its defense that Moreau was "a salaried executive employee, exempt from the FLSA overtime requirements … ." (ROA.89; *see also*, ROA.80-398.) That motion was denied. (*See*, ROA.1046.) Less than two months after its first motion for summary judgment was denied, Harris County filed a second motion for summary judgment, this time again claiming that Moreau and several other deputies who, at that point, had joined lawsuit, were exempt executive employees. (*See generally*, ROA.1053-1271.) That motion was denied. (*See*, ROA.1509-13.) Eventually, Harris County filed a third motion for summary judgment. (*See generally*, ROA.1855-2229.) This time it argued that: (1) the law enforcement lieutenants (both in patrol and investigations) were exempt administrative employees; (2) the criminal justice lieutenants were exempt administrative employees and (3) that all captains were either exempt administrative or executive employees. (*See*, ROA.1863-64; *see also*, ROA.1855-2229.)

The third motion for summary judgment was granted in part and denied in part. (*See*, ROA.2721-65.) Specifically, the magistrate judge held that both the captains and lieutenants were paid on a salary basis for purposes of the § 213(a)(1) exemption defenses as a matter of law (*see*, ROA.2737-41), essentially because, according to him, they probably always received pay for at least forty hours per week (*see*, ROA.2737-39), even though their pay was

tied directly to the number of hours they worked. (*See*, ROA.2737-41.) He also found that "the criminal justice lieutenants and all captains are exempt administrative employees[]" but that there were "genuine issues of material fact as to whether [the law enforcement lieutenants (both in patrol and investigations)] were exempt administrative employees. (ROA.2722.)

Although Harris County did not claim that the law enforcement lieutenants were exempt executive employees in its third motion for summary judgment (*see generally*, ROA.1855-2229) or in its answer (*see*, ROA.65), the case proceeded to trial on the applicability of both that exemption and the administrative exemption (specifically, the duties elements of the exemptions) to them. (*See*, ROA.3116-25.) After Harris County had been fully heard, Moreau and the other plaintiffs moved for judgment as a matter of law under Rule 50 on its executive and administrative exemption defenses. (*See*, ROA.4543.) They claimed that the evidence established that all of the plaintiffs "engaged in frontline law enforcement work" which, by regulation, is not exempt. (*See*, ROA.4543.) They also claimed that, with respect to the executive exemption, there was "no evidence" that the plaintiffs "managed a [customarily recognized] department [or subdivision] of the County[]" or that "they had any significant[, exemption-qualifying] role in hiring or firing." (*See*, ROA.4543; *see also*, ROA.4543 ("They were the lead gun on a shift.").) "That motion [was] denied[,]" and the case proceeded. (ROA.4543.)

Because the ultimate determination of whether an employee qualifies for an FLSA exemption is a question of law, Moreau and the other plaintiffs requested that the judge ask the jury to separately make certain factual determinations (specifically, the amount of time they devoted to particular duties as well as the significance of those duties) so that the trial court could then determine whether those facts support a finding of exempt status under the FLSA. (*See*, ROA.2885-2909, 3162-76; *see also*, ROA.4524 ("MR. [HESSE]: … [W]e would request under Rule 49 that special interrogatories be sent to the jury. There's never harm in doing that. The court of appeals presumes harm in broad form submission, and so we would request that the special interrogatories be sent to the jury."); ROA.3184-88.) The magistrate judge rejected that request (*See*, ROA.4524 ("THE COURT: All right. For the reasons that I've already stated, that objection is overruled.")) and, for each exemption, instead submitted multiple disputed factual allegations combined into one question on an issue of law (exempt status under the FLSA) to the jury. (*See*, ROA.3261-67; *see also*, ROA.3261 ("Has Defendant Harris County proved by a preponderance of the evidence that all Plaintiffs were exempt administrative employees?"); ROA.3264 ("Has Defendant Harris County proved by a preponderance of the evidence that all Plaintiffs were exempt executive employees?").)

The jury answered both of those legal questions in the affirmative. (*See*, ROA.3261, 3264.) Because the jury's answer to those questions meant that the plaintiffs had two primary duties (which, as a proposition of law, logic and common sense is not possible), Moureau and the other plaintiffs requested that the magistrate judge order the jury to continue to deliberate to resolve the inconsistency before being discharged. (*See*, ROA.4611-12; *see also*, ROA.4612 (requesting that "the jury be sent back to redeliberate and told that you can't have two primary duties[]").) The magistrate judge denied the request, received the verdict and discharged the jury. (*See*, ROA.4608-12.) The district court entered judgment on the verdict and in favor of Harris County on July 29, 2024. (*See*, ROA.3269.)

Moreau and the other plaintiffs renewed their motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) and moved, in the alternative, for a new trial under Fed. R. Civ. P. 59. (*See*, ROA.3314-33.) With respect to the executive exemption defense, they claimed that there was legally insufficient evidence for the jury to find that their primary job duty involved management of a customarily recognized department or subdivision of Harris County or that they could hire or fire anyone, both essential elements of the defense. (*See*, ROA.3320-22.) With respect to the administrative exemption, they claimed that there was legally insufficient evidence for the jury to find that their primary job duty was exempt administrative work. (*See*, ROA.3322-25.)

Instead, the evidence established, according to them and as a matter of law, that their primary duty was frontline law-enforcement work, which is non-exempt by regulation. (*See*, ROA.3326.) Finally, Moreau and the other plaintiffs also renewed their complaints about the jury charge (*see*, ROA.3329-31)—specifically, that it improperly asked the jury to resolve a question of law—and the inconsistency of the verdict (*see*, ROA.3326-29), which, in their view, necessitated a new trial.

The magistrate judge denied the plaintiffs' post-trial motions. (*See*, ROA.3476-89.) This appeal followed. (*See*, ROA.3497-99.)

## SUMMARY OF THE ARGUMENT

The Court should reverse the district court's order granting summary judgment in part because there are genuine issues of material fact as to whether any of the plaintiffs were paid on a salary basis and as to whether the criminal justice lieutenants performed any exemption-qualifying work. Alternatively, the Court should reverse and render judgment as a matter of law because the evidence at trial unequivocally established that the law enforcement lieutenants were primarily engaged in frontline law-enforcement work, which is non-exempt by regulation. Alternatively, the Court should order a new trial because the jury was erroneously charged and rendered an inconsistent verdict.

**STANDARDS OF REVIEW**

**A. Motions for Summary Judgment Under Rule 56**

This Court reviews an order granting summary judgment *de novo*, using the same standards as did the district court in considering facts and analyzing law. *See*, *Owsley v. San Antonio Indep. Sch. Dist.*, 187 F.3d 521, 523 (5th Cir. 1999). "Summary judgment is appropriate [if the summary-judgment evidence shows] 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Mello v. Sara Lee Corp.*, 431 F.3d 334, 335 (5th Cir. 2005) (quoting Fed. R. Civ. P. 56). In making that determination, the Court reviews the evidence and draws all inferences in the light most favorable to the nonmoving party. *Baton Rouge Bldg. & Constr. Council AFL-CIO v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir. 1986); *see also*, *Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012) ("[J]udges must not make findings of fact at the … summary-judgment stage[]." (emphasis added)). Generally speaking, "[t]he movant bears the [initial] burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)). However, if the movant will bear the burden of persuasion at trial (for example, when moving for summary

judgment on any part of an affirmative[4] defense), it must do more; in those cases, the movant "must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *McKee v. CBF Corp.*, 299 F. App'x 426, 428 (5th Cir. 2008) (citing *Celotex Corp.*, 477 U.S. at 331); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) ("Thus, if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."); *see also*, Fed. R. Civ. P. 50(a) (standard for judgment as a matter of law, formerly known as a directed verdict).

In other words, the evidence offered in support of, for example, an affirmative defense, must be so overwhelming "that a reasonable jury would not have a legally sufficient evidentiary basis to find for [the nonmovant] on [the affirmative defense]." Fed. R. Civ. P. 50(a); *see also*, *X Techs., Inc. v. Marvin Test Sys.*, 719 F.3d 406, 411 (5th Cir. 2013) ("If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. But if reasonable persons could differ in their interpretations of the evidence, a determination of the issue is for the jury.")

---

[4] Exemptions from the maximum hour requirements of the FLSA are affirmative defenses on which the employer has the burden of proof. See *supra* note 1 and *infra* pages 21-22.

(citations and quotations omitted) (emphasis added); *see also, Lipnicki v. Meritage Homes Corp.*, No. 3:10-cv-605, 2014 U.S. Dist. LEXIS 32951, at *36 (S.D. Tex. Feb. 13, 2013) (Costa, J.) (observing that it is generally more difficult to obtain summary judgment on an affirmative defense). If—and only if—the party moving for summary judgment meets its threshold burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial[]" to overcome summary judgment. *See, Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *see also, Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017) (observing that movant on FLSA exemption defense "must establish beyond peradventure *all* of the essential elements of the … defense to warrant judgment in his favor[]" (emphasis in original) (citations and quotations omitted)); *Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 F. App'x 306, 308 (5th Cir. 2011); *Hoang v. Microsemi Corp.*, No. 4:19-cv-01971, 2025 U.S. Dist. LEXIS 57052, at *8 (S.D. Tex. Mar. 27, 2025) (explaining that, to prevail on summary judgment on an affirmative defense, the movant must establish each element of the defense "with absolute certainty" (citing *Dewan*, 858 F.3d at 334)).

## B. Jury Instructions

This Court reviews a district court's jury instructions and verdict forms for abuse of discretion. *See, Janvey v. Dillon Gage, Inc.*, 856 F.3d 377, 388 (5th Cir. 2017); *Lindsley v. Omni Hotels Mgmt. Corp.*, 123 F.4th 433, 440

(5th Cir. 2024) ("[V]erdict forms are considered part of the instructions such that appellate courts consider the verdict form in light of the instructions." (citations and quotations omitted)). However, "the legal conclusions underlying [the] jury instructions … are reviewed *de novo*." *Carter v. Local 556*, 138 F.4th 164, 183 (5th Cir. 2025) (citations and quotations omitted); *see also*, *Janvey*, 856 F.3d at 388 ("Instructions that hinge on a question of statutory construction are reviewed *de novo*." (citations omitted)).

A district court abuses its discretion and commits reversible error when it gives a jury instructions that is legally erroneous or misstates the applicable legal standard, and such error is not harmless, meaning it likely affected the outcome of the case. *See, e.g.*, *Janvey*, 856 F.3d at 388-92; *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 352 (5th Cir. 2010); *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 494 (5th Cir. 2002). "[W]hen a challenge involves the trial court's failure to give a requested jury instruction, the court will find reversible error only if the requested instruction '1) was a substantially correct statement of law, 2) was not substantially covered in the charge as a whole, and 3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the [party's] ability to present a given [claim].'" *Janvey*, 856 F.3d at 388 (quoting *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 505 (5th Cir. 2012)).

Except in cases of a plain error that affects a party's substantial rights, "[n]o party may assign as error the giving or failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." *Dahlen*, 218 F.3d at 494; *see also*, Fed. R. Civ. P. 51(c)-(d); *Jimenez v. Wood Cnty., Tex.*, 660 F.3d 841, 844-45 (5th Cir. 2011); *Tompkins v. Cyr*, 202 F.3d 770, 783 (5th Cir. 2000); *Crawford v. Falcon Drilling Co.*, 131 F.3d 1120, 1123-24 (5th Cir. 1997) (discussing plain error).

## C. Motions for Judgment as a Matter of Law Under Rule 50

This Court reviews an order denying a renewed motion for judgment as a matter of law *de novo*, using the same standards as the district court. *See*, *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 692 F.3d 358, 364 (5th Cir. 2012) ("We review the district court's denial of a renewed JMOL motion *de novo*." (citations and quotations omitted)). "Rule 50 entitles a movant to judgment as a matter of law when a party has been fully heard on an issue … and … a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *North Cypress Med. Ctr. v. Aetna Life Ins.*, 898 F.3d 461, 473 (5th Cir. 2018) (internal citations and quotations omitted); *see also*, *Ancor Holdings, L.P. v. Landon Cap. Partners, L.L.C.*, No. 23-10552, 2024 U.S. App. LEXIS 21448, at *20-*22 (5th Cir. Aug. 23, 2024); *MultiPlan, Inc. v. Holland*, 937 F.3d 487, 494 (5th Cir. 2019); *Carley v. Crest Pumping Techs.,*

*L.L.C.*, 890 F.3d 575, 578 (5th Cir. 2018) (motion for judgment as a matter of law in a case tried by a jury is a challenge to legal sufficiency of the evidence supporting the jury's verdict). In order to overcome a Rule 50 motion, "the party opposing the motion must at least establish a conflict in substantial evidence on each essential element of their claim [or defense]." *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1039 (5th Cir. 2011) (quoting *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002)).

"Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 485 (5th Cir. 2017) (quoting *Corry v. Liberty Life Assurance Co. of Bos.*, 499 F.3d 389, 398 (5th Cir. 2007)). Evidence is legally insufficient "where the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable jurors could not arrive at a contrary verdict." *Id.* (quoting *Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 854 (5th Cir. 2010)); *see also*, *Carley*, 890 F.3d at 580, 583 n.15 (where no evidence was presented on an issue, the party with the burden of proof[5] on the issue loses).

A court "should review all of the evidence in the record," not just "the evidence and reasonable inferences which tend to support the case of the

---

[5] *Id.*

nonmoving party." *Papin v. Univ. of Miss. Med. Ctr.*, 109 F.4th 354, 362 (5th Cir. 2024) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). But "the court may not make credibility determinations or weigh the evidence, as those are jury functions." *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 966 (5th Cir. 2016) (quoting *Brennan's Inc. v. Dickie Brennan & Co., Inc.*, 376 F.3d 356, 362 (5th Cir. 2004)); *see also*, *Black v. Pan Am Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011) (explaining that the reviewing court "views all the evidence and draws all reasonable inferences in the light most favorable to the verdict[]" (citations and quotations omitted).

## D. Motions for New Trial Under Rule 59

This Court reviews an order denying a motion for new trial for abuse of discretion. *See*, *Consol. Cos. v. Lexington Ins. Co.*, 616 F.3d 422, 435 (5th Cir. 2010) (citation omitted); *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998) (per curiam). "A trial court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Black v. Pan Am. Labs., LLC*, 646 F.3d 254, 258-59 (5th Cir. 2011).

A district court is vested with the discretion to order a new trial for any number of reasons. *See*, Fed. R. Civ. P. 59(a)(1)(A) (court may grant new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court[]"). A motion for new trial is evaluated under a more lenient standard than a motion for judgment as a matter of law because if a

new trial is granted, the case is simply tried again. 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2531 (3d ed. 1995). Also, unlike a motion for judgment as a matter of law, a district court may grant a new trial even if there is substantial evidence supporting the jury's verdict, and the district court can weigh the evidence for itself and "need not view the evidence in a light most favorable to the verdict winner." *United States v. Landau*, 155 F.3d 93, 104 (2d Cir. 1998).

In general, a court may grant a new trial when the verdict is against the weight of the evidence, damages are excessive, the trial was not fair for some other reason, or where the motion raises questions of law arising out of substantial errors in the admission or rejection of evidence or the giving or refusal of jury instructions. Wright & Miller, *supra*, § 2805. Any prejudicial error of law is good grounds for a new trial; Other common grounds include: (1) the verdict is too large or too small; (2) there is newly discovered evidence; (3) conduct of counsel or the court tainted the verdict; (4) there was misconduct affecting the jury; (5) the verdict was based on false testimony and (6) a party was unfairly made the victim of surprise. *Id.*; *see also*, *In re DePuy Orthopedics, Inc.*, 888 F.3d 753, 784 (5th Cir. 2018); *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998).

## ARGUMENT & AUTHORITIES

**1. Overtime exemptions, including the executive and administrative exemptions, are affirmative defenses on which the employer has the burden of proof and are determined on a workweek basis.**

Under the FLSA, "no employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty] hours … at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). "Certain employees, however, are exempt from the overtime requirements [of the FLSA]." *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 352 (5th Cir. 2015). Exemptions are affirmative defenses, and the burden of establishing them rests squarely on the employer. *Corning Glass Works*, 417 U.S. at 196-97. "The decision whether an employee is exempt … is *primarily a question of fact*[.]" *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 350 (5th Cir. 2000) (emphasis added). "However, the ultimate decision whether the employee is exempt from the FLSA's overtime compensation provisions is a question of law." *Id.*

Exemptions are determined on a workweek basis. The FLSA "takes a single workweek as its standard … ." 29 C.F.R. § 778.104; *see also*, 29 C.F.R. § 776.4(a) ("The workweek is to be taken as the standard for determining the applicability of the Act. Thus, if an any workweek an employee is engaged in both covered and noncovered work he is entitled to both the wage and hours benefits of the Act for all of the time worked in that week, unless exempted

therefrom by some specific provision of the Act."); 29 C.F.R. § 784.114 ("The general rule that the unit of time to be used in determining the application of the exemption to an employee is the workweek … ."); *see also*, *Daylight Dairy Prods., Inc.*, 779 F.2d. at 787 ("The Secretary, however, determines whether the executive exemption applies on a week-by-week basis[.]"). Thus, to prevail on an exemption defense—especially at the summary-judgment stage—the employer must carry its burden as to each individual workweek during which it claims an exemption applies.

**2. The Court should reverse because the summary-judgment evidence—even if not controverted and viewing it in the light most favorable to the plaintiffs—would not entitle Harris County to a directed verdict at trial on the salary-basis element of its § 213(a)(1) exemption defenses.**

"The FLSA's overtime provisions 'shall not apply with respect to … any employee employed in a bona fide executive[ or] administrative[] …. capacity … .'" *Zannikos*, 605 F. App'x at 352 (quoting 29 U.S.C. § 213(a)(1)). Common to each of those exemptions is the requirement that the employee be paid on a *salary* basis of at least $455[6] per week. 29 C.F.R. § 541.100(a)(1) (executive employees); 29 C.F.R. § 541.200(a)(1) (administrative employees); *see also*, 29 C.F.R. §§ 541.600-541.607 (salary requirements); *see also*, *Escribano v. Travis*

---

[6] On January 1, 2020, this amount was increased to $684. *See*, Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 84 Fed. Reg. 51,230, 51,231 (Sep. 27, 2019). The change is not relevant to the issues in this case.

*Cnty., Tex.*, 947 F.3d 265, 267 (5th Cir. 2020) ("Both of the exemptions the County asserted apply only if the employees are paid on a salary basis.").

    **a. Salaried workers typically receive the same amount of pay each workweek regardless of the quality or quantity of their work.**

The "general rule" for payment on a salary basis is set forth in 29 C.F.R. § 541.602(a):

> *General rule*. An employee will be considered to be paid on a "salary basis" within the meaning of [29 C.F.R. pt. 541] if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, *which amount is not subject to reduction because of variations in the quality or quantity of the work performed*.

29 C.F.R. § 541.602(a) (emphasis added); *see also, Escribano*, 947 F.3d at 267 ("'[S]alary basis …means what its label suggests: an employee receives the same wage each pay period, regardless of the quantity or quality of the work performed[]' (citations and quotations omitted)). It, of course, describes the prototypical salary: An employee receives a sum certain every week (or month) regardless of how much (or little) he works. In other words, the hallmark of the traditional salary—both legally and in the ordinary sense of the word—is a predictably recurring weekly or less frequent (for example, monthly) wage even where there are variations, many times unpredictable, in the quality (type) or quantity (hours) of work. *Id.*

Moreau and the other plaintiffs were not paid the prototypical salary described in 29 C.F.R. § 541.602(a)—Harris County did something different.[7] On that point there should be no dispute.[8] Moreau and the other plaintiffs' pay—whether in the form of comp time or cash—was tied *directly* to the number of hours they worked. For example, Moreau and the other plaintiffs earned comp time at the rate of one hour of comp time for each hour worked over forty in a workweek.[9] (*See*, ROA.205 ("Exempt employees accrue 1 hour of Compensatory Time for each hour worked over forty hours in one workweek.").) And their comp time was docked when they work fewer than forty hours per week. (*See*, ROA.2682 (dock time); ROA.2683 (unexcused absences and disciplinary suspensions); ROA.2684-85 (salary basis rules).)

If they have no comp time, their pay was docked for any missed work regardless of reason. (*See*, ROA.2682 ("For each workweek in which the Hours Actually worked plus the Paid Absences total less than an employee's required hours, the deficiency is Dock Time. Dock Time applies to both Exempt and Non-Exempt Employees. The deduction calculations are based upon the employee's regular work schedule and rate of pay in effect during the pay period in which Dock Time occurs. Dock Time is one type of unpaid absence.").) Their pay (which includes their comp time) is plainly subject to

---

[7] See *supra* page 7. (*See*, ROA.205.)

[8] *Id.*

[9] *Id.*

reduction based on the quantity of the work performed in contravention 29 C.F.R. § 541.602(a). On these facts, Moreau and the other plaintiffs are not salaried workers under the general test; numerous courts have so held. *See*, *Spradling v. City of Tulsa*, 95 F.3d 1492, 1501 (10th Cir. 1996) (holding city's policy "inconsistent with the salary test" where unwritten policy reduced leave time for absences of less than a day and subjected pay to docking if employee lacked sufficient leave time); *Kinney v. District of Columbia*, 994 F.2d 6, 11 (D.C. Cir. 1993) (holding salary basis test not met where pay reduced, in hourly increments, for partial-day absences if employee did not have sufficient accrued annual leave time); *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 615 (2d Cir. 1991) (holding that "an employee who can be docked pay for missing a fraction of a workday must be considered an hourly, rather than a salaried, employee").

These pay practices, though, implicated two possible exceptions to the general salary basis rule: the public employer safe harbor rule, 29 C.F.R. § 541.710, and the reasonable relationship test, 29 C.F.R. § 541.604(b). To prevail on summary judgment, Harris County needed to establish that it complied with both of them as a matter of law. Since, it did not, the Court should reverse.

### b. Harris County did not establish, as a matter of law, that the public employer safe harbor rule applied to its pay practices.

It is true that there is a relaxed salary-basis test for some—but not all—public sector employees. *See,* 29 C.F.R. § 541.710 (the "public employer safe harbor rule"). That test, though, is inapplicable unless Harris County came forward with competent summary-judgment evidence "demonstrating that [its] … pay system is based upon public accountability laws or principles." *Spradling,* 95 F.3d at 1499. In *Spradling,*

> the City claim[ed that the] plaintiffs' salaries [were] paid from the City's general fund, which in turn is funded by tax revenues, which in turn are required by the Oklahoma Constitution to be levied and collected "for public purposes only." … This general constitutional provision, and its convoluted link to plaintiffs' salaries, is wholly insufficient to allow us to conclude the City's pay system is based upon a public accountability law as envisioned by the DOL. Moreover, the uncontroverted evidence in this case indicates that salary deductions are discretionary on the part of the City. Because public accountability pay systems *require* (sic) an employer to make deductions when an employee is absent from work, the nature of the City's deduction policies makes it obvious that the City is not governed by a public accountability pay system.

*Id.* at 499-500.

Harris County's summary-judgment argument suffered from precisely the same flaws. It assumed—and insisted that the district court do so as well—that a general constitutional prohibition against making gifts of public finds to individuals with a convoluted link to Moreau and the other plaintiffs' wages and its own policies is sufficient to conclude that the County's pay

system is based upon a public accountability law as envisioned by the DOL. (*See*, ROA.1875-78.) That was not sufficient in *Spradling*, and it is not sufficient in this case. *See*, *id*. More importantly, though, Texas law actually says that Harris County is *not required* to make deductions from a salaried worker's pay when he is absent from work:

> In accordance with 29 C.F.R. Section 541.118 and subject to that section's exceptions as described by this section, an employee who is exempt as an executive, professional, or administrative employee under 29 U.S.C. Section 213(a)(1) is entitled to receive *full salary* for any week in which the employee performs work *without regard to the number of days and hours worked*. This is also subject to the general rule that an employee need not be paid for any workweek in which the employee performs no work.

Tex. Gov't Code § 659.016(d) (emphasis added). The salary deductions are *discretionary*. *See*, Tex. Gov't Code § 659.016(e). In other words, since the law does not "*require* (sic) [Harris County] to make deductions when an employee is absent from work[,]" *Spradling*, 95 F.3d at 1499-1500, the County "is not governed by a public accountability pay system[,]" *id*., and the public employer safe harbor rule does not apply.

Moreover, Harris County's own summary-judgment argument underscores the weakness of its position as a proposition of logic. How could the Texas Constitution's prohibition against making gifts of public funds to individuals both require it to make deductions from an employee's pay when he or she does not work and at the same time permit it to award comp time to

nonexempt workers who, according to the County, have no legal right to it—

*or paid time off generally*? (*See*, ROA.1875-78.) *That cannot be right*. That said,

> [t]here is an additional basis for [denying summary
> judgment]. Under its express terms, [§ 541.710] applies
> only if a public sector employee otherwise satisfies the
> requirements of the salary test; that is, ignoring
> deductions that a public sector employer may make for
> absences of less than one day due to personal reasons,
> illness, or injury, the employer must otherwise satisfy
> the test, *and therefore cannot make any other deductions
> from an employee's salary based upon quantity or quality
> of work*. Here, as discussed in greater detail below, it is
> uncontroverted that the City has an express policy of
> making deductions from plaintiffs' pay for [other
> reasons that are not permitted]. In light of this … policy,
> the City cannot "otherwise meet" the salary test
> requirements, and therefore cannot rely upon [§
> 541.710].

*Id*.

In this case, Moreau and the other plaintiffs' "salary" can be docked if

they do not work at least forty hours in a week and *regardless* of reason. (*See*,

ROA.2682 ("For each workweek in which the Hours Actually worked plus the

Paid Absences total less than an employee's required hours, the deficiency is

Dock Time. Dock Time applies to both Exempt and Non-Exempt Employees.

The deduction calculations are based upon the employee's regular work

schedule and rate of pay in effect during the pay period in which Dock Time

occurs. Dock Time is one type of unpaid absence.").) *See*, *Spradling*, 95 F.3d

at 1501 ("If the employer docks the employee's pay for an absence of a few

hours on a particular day, the implication is that the employee really is

expected to work the same number of hours every day, implying in turn that he really is an hourly rather than a salaried worker and that his salaried status is an evasion of the statute." (citations and quotations omitted)). And Harris County has expressly admitted that it, in fact, docks its employees' pay— "from the County Judge to the Sheriff to the Chief Deputy[]"—if "they don't work a full 40 hours and they don't have paid time off[.]"[10] (ROA.2655.)

Since Harris County's dock time policy is not required by Texas law, the public employer safe harbor rule does not apply. *Spradling*, 95 F.3d at 1499-1500. Since it does not apply, the implication is that Moreau and the other plaintiffs are "hourly rather than a salaried worker[s] and that [their] salaried status is an evasion of the statute[,]" *id*. at 1501. The § 213(a)(1) exemptions do not, therefore, apply, and the Court should reverse.

### c. Harris County did not establish that a reasonable relationship exists between Moreau's and the other plaintiffs' salaries and the amount they actually earned.

No one disputes that Harris County compensated Moreau and the other plaintiffs on an hourly basis (with comp time) for hours worked beyond their normal scheduled workweek.[11] (*See*, ROA.205 ("Exempt employees

---

[10] Based on this admission, the County's summary-judgment argument that the "[p]laintiffs have no evidence of an actual practice of improper deductions for partial day absences[]" (ROA.1874) has no merit. *See*, *Escribano*, 947 F.3d at 275 (explaining that the existence of a policy that effectively communicates "that deductions will be made is specified circumstances" is evidence of a "practice of making [impermissible] deductions[]").

[11] See *supra* page 7. (*See*, ROA.205.)

accrue 1 hour of Compensatory Time for each hour worked over forty hours in one workweek.").) To satisfy the salary-basis element of the § 213(a)(1) exemptions in situations like this, an employer must show that a "reasonable relationship exists between the guaranteed amount[12] and the amount actually earned." 29 C.F.R. § 604(b); *see also*, *Helix Energy Sols. Gp., Inc. v. Hewitt*, 143 S. Ct. 677, 684 (2023) (explaining that to establish that it paid its employees on salary basis, an employer must show that its "compensation system function[s] much like a true salary—a steady stream of pay, which the employer cannot much vary and the employee may thus rely on week after week[]"). In spite of its admission that it pays Moreau and the other plaintiffs essentially on an hourly basis, Harris County has made no effort to establish that its compensation system complies with 29 C.F.R. § 541.604(b) for *any* week that Moreau and the other plaintiffs worked, much less all of them. (*See generally*, ROA.1855-2229.) Indeed, it did not attach *any* pay records to its motion for summary judgment or even attempt to perform a § 604(b) analysis, cursory or otherwise. (*See generally, id*.) Since it did not do so, it did not establish the salary-basis element of its exemption defenses as a matter of law, and the Court should reverse.

---

[12] To be clear, Moreau and the plaintiffs do not concede that they were "guaranteed" anything, and there is no evidence in the record to suggest otherwise.

**d. There was a genuine issue of material fact as to whether Moreau and the other plaintiffs were paid on a salary basis.**

Moreau and the other plaintiffs were expected to work forty hours per week. If they did not, their pay was docked regardless of the reason.[13] And for each hour over forty in any week that they worked, Moreau and the other plaintiffs received additional pay (in the form of comp time) on an hourly basis.[14] In other words, Moreau's and the other plaintiffs' pay was tied directly to the quantity of their work. They are, for all intents and purposes, *hourly* workers. Since hourly workers cannot be exempt under 29 U.S.C. § 213(a)(1), The Court should reverse.

**3. The Court should reverse because the summary-judgment evidence—even if not controverted and viewing it in the light most favorable to the Moreau and the other plaintiffs who worked as criminal justice lieutenants—would not entitle Harris County to a directed verdict at trial on the duties element of its standalone administrative exemption defense.**

To qualify for the administrative exemption, Harris County needed to establish beyond peradventure: (1) that it paid Moreau and the other plaintiffs on a salary[15] basis; (2) that their primary duty[16] was the performance of office

---

[13] See *supra* page 7. (*See*, ROA.205.)

[14] *Id.*

[15] They were not paid on a salary basis. See *supra* pages 7, 22-31.

[16] "The term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Factors to consider when determining an employee's primary duty include but are not limited to: (1) the relative importance of the exempt duties as compared with other types of duties; (2) the amount of time spent performing exempt work; (3) the employee's relative freedom from direct supervision and

or non-manual work directly related to the management or general business operations of the employer or the employer's customers and (3) that, in performing their primary duty, they regularly exercised discretion and independent judgment with respect to matters of significance. *See*, 29 C.F.R. § 541.200(a); *see also*, *Dewan* 858 F.3d at 335-40 (discussing duties for administrative exemption); *Elliott v. Dril-Quip, Inc.*, No. H-14-1743, 2015 U.S. Dist. LEXIS 156095, at *16-*25 (S.D. Tex. Nov. 18, 2015).

With respect to the first prong, this Court has explained that "[e]xamples of [administrative] work … include such functional areas as human resources, marketing, quality control, and safety and health. *Dewan*, 858 F.3d at 335 (citing 29 C.F.R. § 541.201(b)). By way of example, administrative employees include "insurance-claims adjusters, financial-services employees, and human-resource managers." *Id.* (citing 29 C.F.R. § 541.203). In other words, if employees "produce those income-generating services" that are "central to [the employer's] business model[,]" their duties are not administrative. *Id.*; *see also*, *id.*, 858 F.3d at 337 (administrative duties must be related to "*management policies* or *general* business operations[]" (emphasis in original)); *see also*, *id.* ("[T]he focus is not on a general concept of advice or consultancy [or quality control] but rather on policy

---

(4) the relationship between the employee's salary and the wages paid to other employees for the kind of non-exempt work performed by the employee. *Id.*

determinations for how a business should be run or run more efficiently." (cleaned up)); *see also*, *id.* at 338 (observing that "general administrative work [applies] to the running of *any* business[]" (emphasis added)); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1230 (5th Cir. 1990) (noting that the relevant distinction "is between those employees whose primary duty is administering the business affairs of the enterprise [and] those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market[]").

None of Harris County's summary-judgment evidence supported a finding as a matter of law that the criminal justice lieutenants' duties related to the "running of *any* business." *Dewan*, 858 F.3d at 838 (emphasis added). In other words, what Moreau and the other plaintiffs actually did while employed by Harris County simply had nothing to do with running a business generally and everything to do with law enforcement. It was not administrative work. The Court should reverse.

**4. The jury was erroneously charged.**

When the charge leaves doubt as to "whether the jury has been properly guided in its deliberations and the challenged instruction affected the outcome of the case[,]" the Court should order a new trial. *Jowers*, 617 F.3d at 352. In this case, Moreau and the other plaintiffs requested a granulated jury instruction consistent with Rule 49 and FLSA jurisprudence.

This Court has long expressed a strong preference for this particular device because it focuses "the juror's attention on the disputed facts." *Guidry*, 598 F.2d at 405; *Kendrick v. Illinois C. G. R. Co.*, 669 F.2d 341, 344 n.7 (5th Cir. 1982); *Walker v. Kansas City S. R. Co.*, 674 F.2d 1130, 1132 (5th Cir. 1982); *Garwood v. International Paper Co.*, 666 F.2d 217, 222 (5th Cir. 1982).

In fact, when a party requests a special verdict and a court refuses to give it, this Court presumes harm. *See, e.g.*, *Hay v. Irving*, 893 F.2d 796, 799 (5th Cir. 1990) ("A general verdict must ordinarily be reversed when one or more claims was improperly submitted to the jury since it is not possible to tell whether the verdict is based on the erroneously submitted claim."). The verdict in this case can only stand if there is enough legally sufficient evidence in the record to support every element of *both* the administrative exemption and the executive exemption for each plaintiff. *See*, *Jones v. Miles*, 656 F.2d 103, 106 n.4 (5th Cir. 1981); *Ward v. Succession of Freeman*, 854 F.2d 780, 790-92 (5th Cir. 1988) (presumed harm where multiple factual questions combined in one question).

Here, as explained below, the jury has indicated that the plaintiffs have two primary duties, which is not possible. They are not, therefore, exempt under either the administrative exemption or the executive exemption. They could be exempt under the combination exemption, but Harris County did not assert it and, even if it had, the jury's answers to the broad form submission

do not permit the Court to make its legal determination as to whether the exemption applies. Accordingly, the Court should order a new trial.

## 5. The evidence is legally insufficient to support the jury's verdict.

### a. With respect to the executive exemption, there is no legally sufficient evidence that the primary job duty of Moreau and the other plaintiffs involved management of a customarily recognized department or subdivision of Harris County or that they could hire or fire anyone.

To establish the standalone executive exemption, Harris County needed to prove that Moreau's and the other plaintiffs' primary duty[17] was management of the enterprise or of a customarily recognized department or subdivision of the enterprise. *See* 29 C.F.R. §§ 541.100(a)(2), 541.102, 541.103, 541.700. "The phrase 'customarily recognized department or subdivision' is intended to distinguish between a mere collection of employees assigned from time to time to a specific job or series of jobs and a unit with permanent status and function." 29 C.F.R. § 541.103(a). "A customarily recognized department or subdivision must have a permanent status and a continuing function." *Id.* "For example, a large employer's human resources department might have subdivisions for labor relations, pensions and other benefits, equal employment opportunity, and personnel management, each of which has a permanent status and function." *Id.*

---

[17] The jury's verdict is inconsistent and indicates that Moreau and the other plaintiffs had multiple *primary* duties. See *infra* 40-42.

– 35 –

All that Harris County established at trial was that Moreau and the other plaintiffs were "in charge" during a particular shift. That's it. It should go without saying, but a shift (for example, the night shift in Moreau's case) is not a "customarily recognized department or subdivision" as that term is used in the regulations, 29 C.F.R. § 541.103(a), or in any sense. Were that so, the "executive" exemption would possibly apply to nearly every rank-and-file employee at the county. Instead, the evidence establishes that Moreau and the other plaintiffs were better classified as "working foremen" who were mere supervisors of subordinate employees as opposed to managers of a recognized subdivision. *See, e.g.*, 29 C.F.R. § 541.106(c) (2006) (contrasting role of working supervisor to exempt executive); 29 C.F.R. § 541.115 (2003); 29 C.F.R. § 541.115 (1992); *see also*, *Morgan v. Family Dollar Stores*, 551 F.3d at 1284-85 (discussing "working foreman" concept).

Harris County also completely failed to establish that Moreau and the plaintiffs could hire or fire anyone (or that their recommendations as to hiring or firing were given particular weight). *See*, 29 C.F.R. § 541.100(a)(2); *see also*, *Miller v. Travis Cnty., Tex.*, 953 F.3d 817, 821 (5th Cir. 2020). In fact, the evidence at trial undisputedly establishes that the plaintiffs could not hire or fire or make recommendations as to either. Furthermore, not once at trial did Harris County identify the "customarily recognized department or subdivision" managed by Moreau or the other plaintiffs. In other words, there

is a complete absence of proof on those issues. Accordingly, the Court should enter judgment as a matter of law in favor of Moreau and the other plaintiffs. *See*, *Carley*, 890 F.3d at 580, 583 n.15 (where no evidence was presented on an issue, the party with the burden of proof loses).

> **b. With respect to the administrative exemption, there is no legally sufficient evidence that the primary job duty of Moreau and the other plaintiffs was the performance of any exemption-qualifying work.**

To establish the administrative exemption, Harris County needed to prove that Moreau's and the other plaintiffs' primary duty[18] was the performance of office or non-manual work directly related to the management or general business operations of Harris County or its customers and that, in performing their primary duty, they regularly exercised discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a); *Dewan*, 858 F.3d at 335-40 (discussing duties for administrative exemption); *Elliott*, 2015 U.S. Dist. LEXIS 156095 at *16-*25. As this Court has explained, "[e]xamples of [administrative] work … include such functional areas as human resources, marketing, quality control, and safety and health. *Dewan*, 858 F.3d at 335 (citing 29 C.F.R. § 541.201(b)).

By way of example, administrative employees include "insurance-claims adjusters, financial-services employees, and human-resource

---

[18] The jury's verdict is inconsistent and indicates that Moreau and the other plaintiffs had multiple *primary* duties. See *infra* 40-42.

managers." *Id.* (citing 29 C.F.R. § 541.203). In other words, if employees "produce those income-generating services" that are "central to [the employer's] business model[,]" their duties are not administrative. *Id.*; *see also*, *id.*, at 337 (administrative duties must be related to "*management policies or general* business operations[]" (emphasis in original)); *see also*, *id.* ("[T]he focus is not on a general concept of advice or consultancy [or quality control] but rather on policy determinations for how a business should be run or run more efficiently." (cleaned up)); *see also*, *id.* at 338 (observing that "general administrative work [applies] to the running of any business[]" (emphasis added)); *Dalheim*, 918 F.2d at 1230 (noting that the relevant distinction "is between those employees whose primary duty is administering the business affairs of the enterprise [and] those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market[]").

At trial, Harris County focused primarily if not entirely—on "quality control" to establish that the work performed by Moreau and the other plaintiffs was administrative work. That term, as used in the regulations, means something fundamentally different than what Harris County suggested it meant. *See*, *Webster's Ninth New Collegiate Dictionary* 963 (1991) (quality control means "an aggregate of activities (as design analysis and statistical sampling with inspection for defects) designed to ensure adequate

quality esp. in manufactured products"); *see also*, *Tex. Foods Indus. Ass'n. v. United States Dept. of Agric.*, 81 F.3d 578, 582 (5th Cir. 1996) (words must be given their plain meaning absent ambiguity); *see also*, *Dewan*, 858 F.3d at 337 ("quality control" should be construed to embrace only duties similar in nature to those duties specifically enumerated in 29 C.F.R. § 541.201(b))).

In this case, there was simply no evidence that what Moreau and the other plaintiffs did related, in any way, to "quality control"—or any of the other duties enumerated in 29 C.F.R. § 541.201(b). To be sure, there is ample evidence that they were an integral part of a law enforcement operation, but there was no evidence that what they did was "directly related to *management policies* or *general* business operations" or, in other words, "policy determinations [for] how a business should be run or run more efficiently … ." *Dewan*, 898 F.3d at 337 (emphasis in original) (internal citations and quotations omitted). "What needs to be kept distinct … is that the [administrative] exemption applies when the employee is involved with administering the affairs of the enterprise, not with producing the commodity of the business. *Id.* at 337 (internal citations and quotations omitted). And since the Harris County Sheriff's Office "has law enforcement as its primary function, the law enforcement activities performed … would appear to be related more to the ongoing day-to-day 'production' operations of the Department than to management policies or 'general business operations.'"

*Smith v. City of Jackson, Miss.*, 954 F.2d 296, 298 n.4 (5th Cir. 1992) (citations omitted); *see also*, *id*. at 298 ("Production activities in the context of municipal services are activities that appear to be related to the primary service goal of the agency.").

Harris County has not proved that Moreau and the other plaintiffs "regularly exercised discretion and independent judgment with respect to matters of significance" in connection with the performance of any arguably exempt duties. 29 C.F.R. § 541.200(a). To the extent it offered any evidence related to discretion and independent judgment, the county only did so with respect to frontline law enforcement duties which are, by regulation, nonexempt. Accordingly, the Court should reverse.

## 6. The Court should order a new trial because the jury rendered an inconsistent verdict.

In this case, the jury found that Moreau and the other plaintiffs were exempt under both the standalone executive exemption and the standalone administrative exemption. (*See*, ROA.3261, 2164.) To make those findings, it had to necessarily determine that they had multiple "primary" duties, which, as a proposition of law, logic and common sense is not possible. It is like saying someone has two firstborn children.

The term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Factors to consider when determining an employee's primary duty include but are not

limited to: (1) the relative importance of the exempt duties as compared with other types of duties; (2) the amount of time spent performing exempt work; (3) the employee's relative freedom from direct supervision and (4) the relationship between the employee's salary and the wages paid to other employees for the kind of non-exempt work performed by the employee. *Id*. "[T]he 'rule of thumb' is that primary duty means that the major part, or more than 50 percent of the employee's time, was spent in performing [exempt] duties." *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1284 (5th Cir. 2008).

It should go without saying, but there cannot be two "primary" duties. Indeed, the executive and administrative exemptions are, "by their very terms … mutually exclusive." *Swigart v. Fifth Third Bank*, 870 F. Supp. 2d 500, 511 (S.D. Ohio 2012). A deputy sheriff "cannot be simultaneously exempt under" both exemptions because they require different *primary* duties. *Id*. "These classifications cannot be rectified." *Id*.; *see also*, *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1232 (5th Cir. 1990); *Chapman v. BOK Fin. Corp.*, No. 12-CV-613-GKF-PJC, 2014 U.S. Dist. LEXIS 101652, at *13-*14 (N.D. Ok. Jul. 25, 2014).

To avoid a retrial, Moureau and the other plaintiffs requested that the magistrate judge order the jury to continue to deliberate to resolve the inconsistency before being discharged. (*See*, ROA.4611-12; *see also*, ROA.4612 (requesting that "the jury be sent back to redeliberate and told that you can't have two primary duties[]").) *See*, *Guidry*, 898 F.2d at 407 ("After the verdict,

they could have sought resubmission to the jury.") Harris County objected to the request, and the magistrate judge denied it, received the verdict and discharged the jury. (*See*, ROA.4608-12.) Since it was denied, the only available remedy is a new trial. *See*, *id*. at 408 ("Nevertheless, because the jury's answers to the questions reflect inconsistent fact findings, we must reverse the judgment … and remand for a new trial … ."). Accordingly, the Court should reverse and order a new trial.

## CONCLUSION

The Court should reverse.

Respectfully Submitted,

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street | Suite 1110
Houston, Texas 77002-1055
Telephone: (713) 222-6775
Facsimile: (713) 222-6739

By: _____

Curt Hesse
Tex. Bar No. 24065414
curt@mooreandassociates.net

*Counsel for Appellants*

**CERTIFICATION REGARDING PRIVACY REDACTIONS**

As required by 5th Cir. R. 25.2.13 and the ECF Filing Standards for the United States Court of Appeals for the Fifth Circuit, I certify that all required privacy redactions have been made.

_____
Curt Hesse

**CERTIFICATION REGARDING ELECTRONIC SUBMISSION**

As required by 5th Cir. R. 25.2.1 and the ECF Filing Standards for the United States Court of Appeals for the Fifth Circuit, I certify that the electronic submission of this document is an exact copy of the paper document and that it has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

_____
Curt Hesse

### CERTIFICATE OF SERVICE

As required by <u>Fed. R. App. P. 25(b)</u> and <u>5th Cir. R. 25.2.5</u>, I certify that I served a copy of this document on all parties or their counsel of record—who are listed below—in accordance with <u>Fed. R. App. P. 25(c)</u> on the date indicated as follows:

Ms. Carolyn Russell
carolyn.russell@ogletree.com
Ms. Amanda Croushore
amanda.croushore@ogletree.com
Mr. Stephen Quezada
stephen.quezada@ogletree.com
Mr. Ryan Swink
ryan.swink@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Allen Center
500 Dallas Street, Suite 2100
Houston, Texas 77002-4734
*Counsel for Appellee Harris County, Texas*

☐ personal delivery
☐ mail
☐ third-party commercial carrier
☐ electronic means
☒ CM/ECF system

Mr. Gavin Martinson
gavin.martinson@ogletreedeakins.com
Mr. John Brown
john.brown@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
8117 Preston Road, Suite 500
Dallas, Texas 75225-6325
*Counsel for Appellee Harris County, Texas*

☐ personal delivery
☐ mail
☐ third-party commercial carrier
☐ electronic means
☒ CM/ECF system

Date:     July 28, 2025

Curt Hesse

**CERTIFICATE OF COMPLIANCE**

As required by Fed. R. App. P. 28(a)(10), 32(g)(1) and 5th Cir. R. 32.3, I certify that this document complies with the:

1.  type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    ☒  this document contains ten thousand one hundred sixty-five (10,165) words, or

    ☐  this brief uses a monospaced typeface and contains [*state the number of*] [(#,###)] lines of text.

2.  typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒  this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Old Style Standard font (12-point Century Old Style Standard font for footnotes in accordance with 5th Cir. R. 32.1), or

    ☐  this brief has been prepared in a monospaced typeface using Microsoft Word 365 with [*state the number of*] [(##)] characters per inch in [*name of type style*] font.

_____
Curt Hesse